CV-09 1703

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MONTEGUE RILEY,                                                        Docket No.:

          Plaintiff,

-against-                                                               **VERIFIED**
                                                        **COMPLAINT**
                                                        *Jury Trial Demanded*
IBEW LOCAL UNION NO. 25, INTERNATIONAL
BROTHERS OF ELECTRICAL WORKERS;
LOCAL UNION NO. 3, IBEW, INTERNATIONAL
BROTHERS OF ELECTRICAL WORKERS,

          Defendants.
-----------------------------------------------------------------X

Plaintiff MONTEGUE RILEY, by and through his attorneys, The Law Office of Steven A. Morelli, P.C., complaining of the Defendants, respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

### PRELIMINARY STATEMENT

1. This action is brought under 42 U.S.C. § 2000e *et seq.* (Title VII); New York State Executive Law § 290 *et seq.*, (NY Human Rights Law), and also contains any other cause of action which can reasonably be inferred from the facts set forth herein, to redress violations of Plaintiff's rights as guaranteed by the laws of the United States and the State of New York prohibiting unlawful discrimination.

### JURISDICTION AND VENUE

2. This Court has original jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 & 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. All conditions precedent to maintaining this action have been fulfilled. A Charge of Discrimination was filed with the Equal Employment Opportunity Commission and given charge number 520-2008-05020. A dismissal and Notice of Right to Sue was issued by the EEOC on March 10, 2008. Attached hereto and incorporated herein, as Exhibit A, is the copy of the Charge of Discrimination and the Notice of Right to Sue issued by the EEOC. This action was properly filed within 90 days of the issuance of the Notice of Right to Sue.

## PARTIES

5. Plaintiff MONTEGUE RILEY, at all relevant times, was and still is a resident and domiciliary of the County of Suffolk, State of New York. Plaintiff resides at 1425 Manor Lane, Bay Shore, NY 11706.

6. Defendant IBEW LOCAL UNION NO. 25, INTERNATIONAL BROTHERS OF ELECTRICAL WORKERS at all relevant times, was and still is a labor organization under and by virtue of the laws of the National Labor Relations Act and the State of New York, with its headquarters located at 370 Vanderbilt Motor Parkway, Hauppauge, NY 11788.

7. Defendant LOCAL UNION NO. 3, IBEW, INTERNATIONAL BROTHERS OF ELECTRICAL WORKERS, at all relevant times, and was and still is a labor

organization under and by virtue of the laws of the National Labor Relations Act and the State of New York, with its headquarters located at 158-11 Harry Van Arsdale Jr Ave., Flushing, NY, 11365-3095.

## BACKGROUND FACTS

8. Plaintiff is an African American male.

9. He was first employed by Defendant IBEW Local 25 (Local 25) in 1986, as an electrician and received his license in 1992. At this time, he was the first African American electrician in Local 25 to become a licensed electrician.

10. Plaintiff is a commercial electrician and as a result of obtaining and maintaining his electrical licenses, and after years of service at Local 25, he is qualified to perform his job and has always performed his duties in a satisfactory manner.

11. IBEW Local 25 represents electrical workers in Nassau and Suffolk Counties, in the State of New York. The electricians work in a variety of areas including residential, commercial, telecommunications, service, and maintenance.

12. IBEW Local 25 has over 2500 members. However, upon information and belief, approximately 80% of Local 25's membership is Caucasian, while minorities, including African Americans, are the remainder of the membership.

13. During the duration of his membership with Local 25, Plaintiff witnessed Local 25's practice of blatant racial discrimination, whereas Local 25 favored its Caucasian membership, while interfering with the ability of its African American membership to obtain work. In addition, whenever Local 25 laid off its members, upon information and belief, African American members are the first members of the union to be laid off.

14. In fact, upon information and belief, Local 25 utilizes its layoffs and other tactics to purposely cause its African American members economic stress so much so that they will feel compelled to leave the union and are forced to seek employment elsewhere.

15. These constant layoffs keep African American union members, like Plaintiff out of work, while upon information and belief, Caucasian members remain unaffected by the layoffs.

16. Plaintiff, like other African American members, has only been employed for six out of the last ten years he has been a member of the union because of layoffs solely based upon race.

17. Although Plaintiff remains ready, willing, and able to continue to perform work for Local 25, Local 25 has denied Plaintiff the opportunity to undertake meaningful assignments. As a result, Plaintiff had to seek alternate employment.

18. Eventually, Plaintiff found employment in New York City with a company called Grace Electric.

19. New York City electricians fall within the jurisdiction of Defendant Local 3 International Brotherhood of Electrical Workers (Local 3).

20. From May 2008 through August 2008, Plaintiff was working as an electrician in Local 3's jurisdiction with their permission, even though he was still a member of Local 25.

21. Upon information and belief, it is customary practice for many electricians from Local 25 to work in Local 3's jurisdiction and vice versa.

22. On August 20, 2008, Plaintiff went to Local 3's offices to pick up his temporary union card, which he did without incident.

23. However, the very next day, Plaintiff was summoned to his bosses' office. When he got there, his supervisors Bill LaCantro and Joe Rutigliano, from Absolute Electric (who bought out Grace Electric) informed him that Ray West, a business agent for Local 3, told them that Plaintiff had to give back his Local 3 union card and leave New York City immediately.

24. Plaintiff was never given an explanation whatsoever as to why he could not remain in New York City and work for Local 3.

25. Even LaCantro and Rutigliano, did not understand why Plaintiff could not work for them. Upon information and belief, they called West several times in order to obtain an explanation.

26. Upon information and belief, Plaintiff's bosses eventually reached West who informed them that he "could lose his job" if he allowed Plaintiff to work in Local 3's jurisdiction. Meanwhile, many Caucasian, Local 25 electrical workers work in Local 3's jurisdiction without any problem whatsoever.

27. Upon information and belief, the real reason Plaintiff could not work under Local 3's jurisdiction was because of his race.

28. Upon information and belief, Donald Fiore, a business agent for Local 25, has engaged in discriminatory practices designed to hinder the opportunities of minority workers to find employment within Local 25's jurisdiction.

29. As a business agent, Fiore is responsible for the transfer of Plaintiff's union membership from Local 25 to Local 3 as he issues the proper paperwork to complete the transfer.

30. Upon information and belief, however, Fiore would not assist Plaintiff in transferring to Local 3 based upon his discriminatory animus towards Plaintiff.

31. In or about September 2007, Plaintiff asked Fiore about his telephone conservation with West in connection with Plaintiff's transfer. Fiore responded that he never spoke with West regarding Plaintiff's transfer.

32. However, upon information and belief, West admitted to Plaintiff's bosses, at Absolute Electric, that he spoke with Fiore in connection with Plaintiff's transfer.

33. In addition, in or about November 2007, Plaintiff went to work on a job site at the State University of New York at Stony Brook (SUNYSB). SUNYSB was required to use a minority contractor for the job in order to receive public funding for the project.

34. The minority contractor was Primus Electric, which is a subsidiary of Seamen Electric, a non-minority contractor. When Plaintiff arrived at the job site, he noticed that all of the equipment, paperwork, and supervisors were from Seamen Electric, and not Primus Electric.

35. As a result of Plaintiff's confusion, Plaintiff approached Fiore about the issue. He told Fiore that he thought he would be working for a minority contractor, but when he arrived at the site, it appeared that the contractor was a non-minority

contractor. He expressed his concerns to Fiore that it was as if it was supposed to appear that a minority contractor was working on the project so that SUNYSB could obtain public funding for the project.

36. After expressing his concerns to Fiore, and in retaliation for expressing such concerns, Fiore told Plaintiff to leave the job site immediately.

37. In further retaliation, Fiore indicated on Plaintiff's Local 25 paperwork that Plaintiff "quit" the site, which is a designation that will remain on Plaintiff's record permanently.

38. Fiore, however, was mistaken because Plaintiff never quit the site. Instead, he was fired from the job after he complained that he was not working for a minority contractor.

39. Fiore also failed to pay Plaintiff the contractually-required three-hour "show up time" that he was entitled to for going to the assignment.

40. Based upon the foregoing discriminatory and retaliatory treatment, Plaintiff has been damaged financially, psychologically and emotionally, and has had to spend great amounts of his time, money and efforts in order to hire an attorney and pursue his rights to equal employment.

## CLAIMS FOR RELIEF

41. By reason of the foregoing, Defendants have unlawfully discriminated against Plaintiff in his compensation, terms conditions and/or privileges of employment because of his race, national origin, and opposition to discriminatory practices in that he was subjected to adverse employment actions, and an ongoing atmosphere of adverse acts which went unabated in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq*; the New York Executive Law, Human Rights Law § 290 *et. seq.*; and the Constitution of the State of New York.

**WHEREFORE,** Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, injunctive relief, liquidated damages, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant Plaintiff any other relief to which he is entitled, including but not limited to:

   a. Awarding reasonable attorneys fees and costs and disbursements of this action;

   b. Issuing a permanent injunction enjoining Defendants from any further actions abridging Plaintiff's rights, including but not limited to, an injunction preventing the Defendants or any of their agents or employees from providing negative, misleading, or disparaging references pertaining to Plaintiff's employment; and,

    c. Granting such other and further relief that to the Court seems just and proper.

**Further**, Plaintiff demands a trial by jury.

Dated: Carle Place, New York
April 21, 2009

THE LAW OFFICE OF
STEVEN A. MORELLI, P.C.
*Attorneys for Plaintiff*
One Old Country Road, Ste. 347
Carle Place, New York 11514
(516) 393-9151

_____
Steven A. Morelli (SM-4721)

## VERIFICATION

STATE OF NEW YORK )
                             ) ss.:
COUNTY OF SUFFOLK )

MONTEGUE RILEY, being duly sworn, states that he has reviewed the foregoing Complaint and that the contents of said Complaint are true to his own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, he believes them to be true.

_____
MONTEGUE RILEY

Duly sworn to before me
this 2nd day of April, 2009

_____
NOTARY PUBLIC

Exhibit A

EEOC Form 161-B (3/98)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Montegue Riley<br>1425 Manor Lane<br>Bay Shore, NY 11706 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2008-05020 | Patrick A. Sanford,<br>Federal Investigator | (212) 336-3677 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Spencer H. Lewis, Jr.,
Director

MAR 1 0 2009
*(Date Mailed)*

Enclosures(s)

cc: **Respondent:**
IBEW LOCAL 25
Attn: Union President
370 Vanderbilt Motor Parkway
Hauppauge, NY 11788

**Respondent's Attorney:**
The Law Offices of Richard S. Brook
114 Old Country Road, Suite 250
Mineola, NY 11501

**Charging Party's Attorney:**
Steven Morelli, Esq.
Suite 347
Carle Place, NY 11514

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy [Stat]ement before completing this form.

AGENCY:
[ ] FEPA
[X] EEOC

CHARGE NUMBER

_____ New York State Division of Human Rights _____ and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Montegue Riley | 631-647-4095 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1425 Manor Lane | Bay Shore, New York 11706 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| IBEW, Local 25 | 2500+ | 631-273-4567 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 370 Vanderbilt Motor Parkway | Hauppauge, New York 11788 | Suffolk |

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| IBEW, Local 3 | 2500+ employees | 718-591-4000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 158-11 Harry Van Arsdale Jr. Ave. | Flushing, New York 11365-3095 | Queens |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

[X] RACE  [X] COLOR  [ ] SEX  [ ] RELIGION  [ ] AGE
[X] RETALIATION  [ ] NATIONAL ORIGIN  [ ] DISABILITY  [ ] OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA): 1986
LATEST (ALL): August 22, 2008

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

Please see attached rider.

<u>Claimant's Attorneys:</u> (address to be used for all correspondence)

The Law Office of Steven A. Morelli, P.C.
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 393-9151
Fax: (516) 747-5024

---

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date              Charging Party *(Signature)* | |

EEOC FORM 5 (10/94)

## RIDER TO CHARGE OF DISCRIMINATION

1. Claimant Montegue Riley is an electrician employed by Respondent International Brotherhood of Electrical Workers (IBEW), Local 25. He has been so employed since 1986. While so employed he has witnessed Respondent's practice of blatant racial discrimination and, unfortunately, has also fallen prey to it, as set forth below.

2. Local 25 represents electrical workers in the counties of Nassau and Suffolk on Long Island, New York. The electricians work in a variety of areas including residential, commercial, telecommunications, service and maintenance.

3. Claimant is a commercial electrician, and also happens to have been the first black electrician in Local 25 to become a licensed electrician, which he did in 1992. As a result of Claimant having obtained and maintained his electrical licenses and his years of service to IBEW, he is qualified to perform his job and was otherwise doing the duties of his job in a satisfactory manner.

4. Local 25 has over 2500 members. However, approximately 80% of Local 25's membership is white, while minorities, including blacks, make up the remainder of the membership. As a result, Local 25 adheres to an unwritten policy of favoring its white brothers while at the same time hindering the careers and the ability to obtain work for its black brethren. For example, Claimant has witnessed over the years how every time Local 25 has had to lay off its employees, the black employees are always the first to go. Upon information and belief, Local 25 utilizes layoffs and other tactics to cause its black members economic stress such that they feel compelled to leave the union or seek employment elsewhere. For example, specifically relating to Claimant, Claimant has only been employed for six of the last ten years due to layoffs solely based upon the color of his skin.

5. As a result of these constant layoffs that have kept black employees like Claimant out of work while still allowing white employees to find work, and despite that Claimant has been ready, able and willing to perform work for Local 25, Local 25 has not given Claimant any meaningful assignments. As a result, Claimant sought to obtain employment outside of Nassau and Suffolk counties. He found such employment in New York City with a company called Grace Electric. New York City electricians fall within the jurisdiction of Respondent IBEW, Local 3.

6. From May 2008 through August 2008, Claimant was working as an electrician in Local 3's jurisdiction with their permission despite being a member of Local 25. In fact, many electricians from Local 25 have worked in Local 3's jurisdiction and vice versa. On August 20, 2008, Claimant went to Local 3's offices to pick up his temporary union card, which he did without incident.

7. However, the very next day, on August 21, 2008, Claimant was summoned to his bosses' office. When he got there, his bosses informed him that Ray West, a business agent for Local 3, told them that Claimant had to give back his Local 3 union card and leave New York City immediately.

8. Claimant was never given a reason why he could not remain in New York City and work for Local 3. Even Bill LaCantro and Joe Rutigliano, Claimant's bosses and supervisors from Absolute Electric (who had bought out Grace Electric after the job had started), apparently could not understand why Claimant could not remain working for them. Upon information and belief, they had called Ray West a number of times to find out what the problem was.

9. They eventually reached Ray West by telephone who told them that he "could lose his job" if he allowed Claimant to work in Local 3's jurisdiction. However, this reason is highly suspect as there have been and still are many (white) Local 25 electrical workers working in Local 3's jurisdiction without any problem.

10. Upon information and belief, the real problem is the racially discriminatory practices of Don Fiore, a business agent for Local 25. He has, for years, engaged in practices designed to hinder the ability of minority workers to find employment within Local 25's jurisdiction, including the aforementioned layoffs that Claimant was subjected to. As a business agent, Don Fiore would have been involved in the transfer of Claimant's union membership from Local 25 to Local 3. All that should have been required was for Ray West to call Don Fiore, who would then send the proper paperwork. However, upon information and belief, Don Fiore would not help Claimant be transferred in this case, or he otherwise gave Ray West false information designed to hinder Claimant's career. Claimant was not part of the telephone call between Ray West and Don Fiore, but based on past practice there should have been no other problem with the transfer unless Don Fiore had said or done something designed to stop it from occurring.

11. In fact, Don Fiore attempted to cover up his actions by denying to Claimant that he spoke with Ray West regarding the transfer, though Ray West admitted to Claimant's bosses at Absolute Electric that he had spoken with Don Fiore.

12. Other examples of Don Fiore's discriminatory animus can be seen in how he handles himself when confronted with racial issues. For example, in or about November 2007, Claimant went to work on a job site at the State University of New York at Stony Brook, which was supposed to be using a minority contractor in order to receive the public funding that it received for the project.

13. The minority contractor was Primus Electric, which is a subsidiary of Seamen Electric, a non-minority contractor. When Claimant went to the job site, he noticed that all of the equipment, paperwork, and supervisors were from Seamen Electric, and that nothing bore

the name of Primus Electric. Claimant approached Don Fiore about the fact that he thought he would be working for a minority contractor, which was what he wanted, but that it appeared to him based on what he observed at the site that the use of a minority contractor was a scheme designed so that Stony Brook could receive public funding for its project.

14. After the complaint, Don Fiore told Claimant to leave the job site, and then even went so far to cover up his blatantly retaliatory actions by marking Claimant down on Local 25's paperwork as having "quit" the site, which is a designation that will remain in Claimant's record despite that he never quit the site, but had been kicked off the site after he complained that he was not working for the minority contractor that he though he was going to be working for. Don Fiore has also failed to pay Claimant the contractually-required three-hour "show up time" that he is entitled to for going to the assignment in the first place.

15. Based upon the foregoing discriminatory and retaliatory treatment, Claimant has been damaged financially, psychologically and emotionally, and has had to spend great amounts of his time, money and efforts in order to hire an attorney and pursue his rights to equal employment.